FILED

2006 SEP 11 PM 1:30

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MEYERS DIVISION

**BEATRIZ MARTINEZ-CLAIB, M.D.**

Plaintiff,

v.

**BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA,
METROPOLITAN LIFE INSURANCE COMPANY,**

Defendants.

Case No.

2:06-cv 479-FtM-99SPC

## COMPLAINT

Plaintiff Beatriz Martinez-Claib, M.D., alleges:

### Jurisdiction and Venue

**1.** This action arises under the Employee Retirement Income Security Act of 1974, 29 USC §1001 *et seq.* (ERISA) and more particularly 29 USC §§1132(a)(1)(B) and 1132(g). This Court has jurisdiction in this matter under 29 USC § 1132(e) and 28 USC § 1367(a). At relevant times, Dr. Martínez-Claib resided in Fort Myers, Florida, and the performance of various of defendants' obligations, which obligations defendants failed and refused to perform as herein alleged, was due at that location.

//

//

**Factual Background**

2.  Dr. Martínez-Claib is a former employee of Family Health Centers of Southwest Florida, Inc. ("Health Centers"). At relevant times, Dr. Martinez-Claib was and it is a qualified participant in and beneficiary of the employee long-term disability plan ("Plan") established and maintained by Health Centers for and on behalf of certain of its employees. The Plan was and is an employee benefit plan as defined by 29 USC §1002(3).

3.  The Plan was fully insured and was funded through the purchase of a group disability insurance policy, group policy number LTD BGGR0957220001, ("Policy") issued by defendant Business Men's Assurance Company of America. Defendant Metropolitan Life Insurance Company ("MetLife") served as claims administrator for claims submitted by plan participants and/or beneficiaries, and made determinations as to which claims would be honored and which claims would be rejected.

4.  On September 25, 2001, Dr. Martinez-Claib and a Health Centers representative executed a Professional Services Agreement whereby Dr. Martinez-Claib was to provide outpatient medical services and related administrative and substantive services as a physician employee of Health Centers. September 25, 2001, was therefore Dr. Martinez-Claib's date of hire with Health Centers.

**5.** In the weeks following September 25, 2001, Dr. Martinez-Claib, as a function of her employment with Health Centers, performed a number of administrative and substantive tasks on Health Centers' behalf. These included, among other things, familiarizing herself with Health Centers' procedures and policies; transferring licensure and insurance relationships to Health Centers; arranging for admission to medical staffs at local hospitals as a Health Centers physician; securing a Controlled Substance Registration Certificate from the United States Department of Justice Drug Enforcement Administration in the same capacity; and engaging in consultations, correspondence, meetings and interviews with Health Centers medical and administrative staff.

**6.** On November 6, 2001, Dr. Martinez-Claib commenced treating patients day-to-day as a physician at Health Centers. Thereafter, and up until the time her disability commenced as alleged below, she continued to work full-time in that capacity.

**7.** As relevant here, and pursuant to the terms of the Policy, an employee's LTD coverage became effective when two distinct requirements were satisfied. First, the employee had to be "Actively at Work" at Health Centers' place of business at least 30 regularly scheduled hours per week; second, the employee had to complete a waiting period of 60 days from her date of hire. Once these requirements were satisfied, the employee's effective date would be the first day of the month commencing immediately thereafter.

**8.** As of November 25, 2001, Dr. Martinez-Claib was working at least thirty regularly scheduled hours per week at Health Centers' place of business, and 60 days had elapsed since her September 25, 2001 date of hire. Consequently, she satisfied all pertinent requirements for coverage as of November 25, and her coverage became effective, pursuant to the terms of the Policy, on December 1, 2001.

**9.** The Policy terminated on March 31, 2003.

**10.** The Policy provided for monthly disability benefits of 60% of a beneficiary's Basic Monthly Earnings, not to exceed a benefit of $6,000, reduced by certain "Other Income Benefits" but in no event less than $50 per month. The Policy defined "disability" or "disabled" thusly: "through the Elimination Period and until Social Security Normal Retirement Age, the Insured cannot perform the essential duties of his or her regular occupation on a full-time basis because of Sickness or Injury."

**11.** In connection with her employment as a Health Centers physician, Dr. Martinez-Claib was never provided with a copy of the Policy. Moreover, she was initially provided with an employee handbook by Health Centers which was intended not for physicians but for non-physician staff. Ultimately, she was finally provided an "Employee Handbook" for Health Centers physicians, which included information apparently intended to constitute a summary plan description ("Physician SPD") pertinent to her employment benefits, including medical insurance, a dental plan, life

insurance, retirement benefits, an employee assistance program, and long term disability insurance. Respecting long term disability insurance, the Physician SPD provided in its entirety:

> All regular full-time employees are covered by a Long Term Disability policy. In the event of a long-term illness or other disabling condition, 60% of the employee's basic monthly earnings (maximum of $6,000) is payable under this coverage. There is a waiting period of 90 days of continuous total or partial disability before payments can be made. Monthly benefit will be reduced by any other income benefits paid (workers compensation, social security, any other disability income benefits.) Long-Term Disability Coverage is provided to the employee by Family Health Centers with no cost to the employee.

**12.** On December 2, 2001, Dr. Martinez-Claib suffered a grand mal brain seizure, subsequently diagnosed as a brain tumor, and underwent invasive brain surgery later in December. Thereafter, she was more precisely diagnosed with extra-nodal sinus histiocytosis, also known as Rosai-Dorfman disease, which was determined to be the cause of the disabling brain tumor. She remained off work until early February 2002; on February 4, she attempted to return to work as a physician at Health Centers.

**13.** Dr. Martinez-Claib's condition, however, continued to deteriorate to the point she could no longer work as a physician, and in May 2002 her tenure as such was terminated by Health Centers owing to her disability; she was reassigned, at a significant reduction in pay, as a Bilingual Health Educator. She worked in that capacity until April 2003, when her deteriorating physical condition compelled her to stop working altogether. Since that time, she has been, and remains, incapable of working, and in

particular is not able to perform the occupational duties of a physician.

**14.**  In March 2004, Dr. Martinez-Claib submitted to MetLife a valid and payable claim for long-term disability benefits under the Plan.

**15.**  On November 23, 2004, MetLife sent to Dr. Martinez-Claib a letter denying her long-term disability claim. In this letter, MetLife maintained that Dr. Martinez-Claib's coverage had not become effective until February 3, 2002, based on an assertion that her date of hire had been November 6, 2001; and that the Policy had terminated on March 31, 2003, prior to the time Dr. Martinez-Claib's condition deteriorated to the point she was precluded even from working as a Bilingual Health Educator. Based on these assertions, MetLife maintained that "there is no qualifying period of disability under the long-term disability plan with MetLife and you are not eligible to receive benefits under this plan."

**16.**  On May 20, 2005, Dr. Martinez-Claib's counsel submitted to MetLife an administrative appeal of the denial of Dr. Martinez-Claib's long-term disability claim. In connection with this appeal, counsel explained to MetLife that it had erroneously considered her date of hire to be November 6, 2001, when it in fact had been September 25, 2001. Consequently, Dr. Martinez-Claib's effective date, under the terms of the Policy, had been December 1, 2001. Moreover, under the terms of the Policy, Dr. Martinez-Claib's regular occupation was as a physician, and her date of

disability occurred in May 2002, when her condition precluded her from working as a physician and required that she be reassigned to work as a Bilingual Health Educator. Consequently, because MetLife had gotten both the effective date of coverage and date of disability wrong, its conclusion respecting Dr. Martinez-Claib's claim was erroneous. Moreover, counsel advised that because the Physician SPD did not include any of the qualifications or restrictions cited by MetLife in its correspondence of November 23, 2004, they were unenforceable as against Dr. Martinez-Claib in any event.

**17.**   MetLife subsequently acknowledged receipt of counsel's appeal letter.

**18.**   In the approximate 15 months since the submission of the administrative appeal, MetLife has failed to issue any decision on the administrative appeal, nor has any other communication from MetLife, beyond those described above, been forthcoming. Pursuant to 29 CFR §§2660.503-1(i)(1), (i)(3)(i), and (l), therefore, the Plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of Dr. Martinez-Claib's claim, and Dr. Martinez-Claib is deemed to have exhausted the administrative remedies available under the Plan.

DR. MARTINEZ-CLAIB, FOR A FIRST CAUSE OF ACTION FOR BENEFITS DUE UNDER AN EMPLOYEE WELFARE PLAN PURSUANT TO 29 U.S.C. SECTION 1132, SUBSECTONS (a)(1)(B) AND (g) , ALLEGES:

**19.** Dr. Martinez-Claib refers to each and every foregoing paragraph of this complaint and incorporates those paragraphs as though set forth in full in this cause of action.

**20.** As a direct and proximate result of the improper acts and/or omissions of the various defendants as herein alleged, Dr. Martinez-Claib has had benefits wrongfully withheld from her under the terms of the Plan in question.

**21.** As a direct and proximate result of the improper acts and/or omissions of the various defendants as herein alleged, Dr. Martinez-Claib has been compelled to incur reasonable attorney fees and other costs associated with the investigation of her claim and the prosecution of this action.

WHEREFORE Dr. Martinez-Claib prays for judgment as follows:

**1.** An award of all disability benefits wrongfully withheld from her under the terms of the Plan, with pre-judgment and post-judgment interest thereon;

//

//

//

//

//

//

2. An award of attorney fees, interest and costs as authorized by statute;

3. For such other and further relief as the court deems proper.


Dated: September 6, 2006

*Richard Johnston* (signature)

Richard Johnston
Trial Counsel
Attorney for Plaintiff
Beatriz Martinez-Claib, M.D.
California State Bar no. 124524
Law Office of Richard Johnston
131A Stony Circle, Suite 500
Santa Rosa, California 95401
Phone (707) 577-7422
Fax (707) 837-9532
E-mail: RichardJohnstonEsq@gmail.com