## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

BEATRIZ MARTINEZ-CLAIB,

                Plaintiff,

-vs-                                              Case No.  2:06-cv-479-FtM-34SPC

BUSINESS MEN'S ASSURANCE COMPANY OF
AMERICA; METROPOLITAN LIFE
INSURANCE COMPANY,

                Defendants.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Defendants Business Men's Assurance Company of America, and Metropolitan Life Insurance Company's Motion for Summary Judgment (Doc. #29) filed on April 30, 2007, and the Plaintiff Beatriz Martinez-Claib, M.D.'s Motion for Summary Judgment (Doc. # 31) filed on April 30, 2007.  On June 19, 2007, the Court issued a Report and Recommendation (R&R) which the District Court Recommitted on March 31, 2008.

## FACTS

On September 23, 2001, the Plaintiff signed a letter of intent to accept employment with the Family Health Care Centers of Southwest Florida (FHC). (STD:11).[1]  On September 24, 2001, she entered into a Professional Services Agreement (PSA) with FHC to provide physician services. (STD: 12, 18).  FHC signed the PSA on September 25, 2001. (STD:18).  The terms of the PSA, were

_____

[1]      For the purposes of this Report and Recommendation citations to the Short Term Disability Administrative Record will be designated (STD), citations to the Long Term Disability Record will be designated(LTD), and citations to the Plan will be designated as (BMA).

scheduled to become effective on or about November 5, 2001, and continue through November 4, 2003. (STD:16).   Under the terms of the PSA, FHC was required to provide the Plaintiff with specified benefits including long term disability insurance. (STD:15).   The PSA also provides the term of this agreement shall begin on or about November 5, 2001, and continue until November 4, 2003. (STD:16).   On November 6, 2001, the Plaintiff began her work as a physician with FHC. (LTD:14).

The Plaintiff suffered a grand mal brain seizure on December 2, 2001. (LTD:14).   The Plaintiff was subsequently diagnosed with a brain tumor, and underwent surgery later in December of 2001. (LTD:14).   The Plaintiff was off work until early February.   On February 4, 2002, the Plaintiff resumed her duties at FHC. (LTD:14).   In May of 2002, the Plaintiff's health had deteriorated to the point where she was no longer able to work as physician and she was reassigned as a Bilingual Health Educator. (LTD:14).   The Plaintiff remained in that position until April 8, 2003, when she could no longer continue to work. (LTD:14, 81-83).   The Plaintiff never returned to work in any capacity. (LTD:14).

On March 31, 2003, FHC cancelled its policy with MetLife. (LTD:81).   In March of 2004, the Plaintiff submitted a claim for disability benefits with MetLife. (LTD:14).   The Plaintiff's claim was denied on November 23, 2004. (LTD:14).   In a letter denying the Plaintiff's claim, the Defendant stated the benefits were denied noting her coverage was not effective under the terms of the policy until February 3, 2002, and further that FHC cancelled its long term disability policy with MetLife on March 31, 2003, prior to the Plaintiff's last day of work on April 8, 2003. (LTD:14, 71).   As a result, MetLife denied the Plaintiff's claims arguing there had been no qualifying period of

disability under the term of the long term disability Plan. (LTD: 71).  On November 23, 2004,

Metlife sent the Plaintiff its decision denying her long term disability benefits. (LTD: 71-72).

The Plaintiff filed an appeal with MetLife on May 20, 2005, however, the appeal file was

apparently lost and no final determination was ever completed on the Plaintiff's file.  In response to

MetLife's final determination denying her LTD benefits, and a "no decision" on the Plaintiff's

appeal,  the Plaintiff filed the instant lawsuit pursuant to the Employee Retirement Income Security

Act of 1974 29 U.S.C. § 1001 *et seq*. (ERISA).

## STANDARD OF REVIEW

ERISA claims are subject to three standards of review. <u>Yochum v. Barnett Banks, Inc.</u>

<u>Severance Pay Plan</u>, 234 F.3d 541, 543 (11th Cir. 2000).  A brief discussion of those standards is

appropriate here.  In <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 S. Ct. 948, 103 L.

Ed. 2d 80 (1984), the U.S. Supreme Court held that ERISA claims should be reviewed *de novo*

unless the plan's administrator was also in a position to deny a claim for the benefits.  <u>Brown v. Blue</u>

<u>Cross Blue Shield of Alabama, Inc</u>., 898 F.2d 1556, 1559 (11th Cir. 1990).  In circumstances where

the plan's administrator also has the discretion to deny the claim, the Court should review the plan

administrators or fiduciary's decision under the "arbitrary and capricious" standard.  <u>Yochum</u>, 234

F.3d at 544.  "Finally, if the plan grants the fiduciary or administrator discretion, but the court finds

a conflict of interest between the fiduciary or administrator and the company, a 'heighten arbitrary

and capricious' standard applies." <u>Id.</u>  If the Court finds such a conflict of interest, "the court will

consider this conflict in its analysis." <u>Id</u>.  The Eleventh Circuit Court of Appeals has held when an

insurance company is the ERISA plan administrator and also responsible for paying claims that "a

strong conflict of interest exists making application of the heightened arbitrary and capricious

standard appropriate."[2] Brown v. Bellsouth Telecommunications Inc., 73 F. Supp. 2d 1308, 1319 (M.D. Fla. 1999) (citing Brown v. Blue Cross Blue Shield of Alabama, 898 F.2d at 1562)).

Regardless of whether the regular or heightened arbitrary and capricious review applies, the Court must first review *de novo* the administrator's decision to determine whether the decision was right or wrong. HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001) (citing Godfrey v. Bell Telecommunications, Inc., 89 F.3d 755, 758 (11th Cir. 1996) (holding that a *de novo* review must first be held to decide if the administrator's determination was wrong). When assessing the correctness of the administrator's decision, the Court's inquiry is limited to the administrative record known to the administrator when the decision to deny the LTD benefits was made. Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). Only after the *de novo* review and the Court determines that the administrator is wrong, does it then look for a conflict of interest. HCA Health Servs. of Georgia, Inc., 240 F.3d at 993.

If the Court determines that the administrators decision was wrong, the Court must then decide whether the claimant has proposed a reasonable interpretation of the plan. Lee v. Blue Cross Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994). Assuming the claimant's

---

[2]    When considering a conflict of interest the Eleventh Circuit has held:The beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary. A conflicted fiduciary may favor, consciously or unconsciously its interest over the interest of the plan beneficiaries. The standard of review for a fiduciary operating under a conflict of interest remains arbitrary and capricious with a significantly diminished degree of deference. Although [e]ven a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries, the burden shifts to the fiduciary to prove that is interpretation of plan provisions committed to its discretion was not tainted by self-interest. Adams v.Thiokol Corp., 231 F.3d 837, 842 (11th Cir. 2000) (citing Brown v. Blue Cross Blue Shield of Alabama, Inc., 898 F.2d 1556, 1568 (11th Cir. 1990)). If the fiduciary succeeds in proving this burden, the opposing party 'may still succeed if the action is arbitrary and capricious by other measures.' Adams, 231 F.3d at 842.

interpretation is reasonable, the Court then turns to whether or not the administrator's wrong interpretation of the plan is nonetheless reasonable. HCA Health Servs. of Georgia, 240 F.3d at 994. A plan administrator's wrong but reasonable interpretation of the plan is entitled to deference, even in light of the claimant's reasonable interpretation, unless the administrator suffers from a conflict of interest. Id. The Plaintiff's reasonable interpretation does not trump the administrator's wrong interpretation. Id. The principles governing the administrator's decision are similar to the principles of trust law which state that the administrator's interpretation will not be disturbed if it is reasonable. Firestone Tire and Rubber Co., 489 U.S. at 110-111.

The first step for the Court in an ERISA action is to conduct a *de novo* review of the administrative record to determine if the administrator's decision was right or wrong. Williams v Bellsouth Telecommuncations, Inc., 373 F.3d 1132, 1138 (11th Cir. 2005); HCA Health Servs. of Georgia, 240 F.3d at 993. The Court will review *de novo* MetLife's initial decision to discontinue the Plaintiff's LTD benefits.  If after a *de novo* review of the administrative record, the Court determines that the administrator was wrong, the Court will review whether or not the arbitrary and capricious standard or the heighten arbitrary and capricious standard should be used. Williams, 373 F.3d at 1138.

## DISCUSSION

The Plaintiff argues she is entitled to benefits under the terms of the policy as a Class I employee due to her disability which she claims began in May 2002.  She further argues that MetLife is prohibited from raising the preexisting condition exclusion as a defense because it was not raised in its denial letter and/or in the alternative MetLife erred in denying her benefits because it erroneously determined her date of hire.  MetLife states that  Plaintiff has no legal coverage under

the Plan because her coverage became effective on February 4, 2002, after she became ill.  MetLife further argues the Plaintiff's claim was untimely filed, or in the alternative, the case should be remanded to MetLife for a formal determination of the Plaintiff's administrative appeal.

### (1) Administrative Exhaustion

First, the Court will address MetLife's alternative request for remand since that determination will affect whether or not the case is remanded or a decision is reached on the record. MetLife argues the case should be remanded because the Plaintiff's appeal file was misplaced and no final determination was ever made.  "It is well-established law in this circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." HCA Health Services of Georgia, Inc. v. Employers Health Insurance Company, 240 F.3d 982, 992 (11th Cir. 2001) (citing Springer v. Wal-Mart Associates Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990)).

In this instance, the Plaintiff complied with the administrative procedures and filed her appeal within 180 days of receiving MetLife's letter denying her claim. (LTD: 71).  MetLife acknowledges there were multiple communications between MetLife and the Plaintiff regarding the denial of her claim and further acknowledges the Plaintiff filed a formal appeal via counsel on May 20, 2005. However, MetLife lost the Plaintiff's file and never completed its appeal review.

It is undisputed, the Plaintiff and MetLife were engaged in the appeals process.  The Plaintiff entered into negotiations with MetLife and in good faith filed her appeal within the 180 day time limit outlined in the Plan.  MetLife then had 45 days after the appeal was formally filed to file a response. (LTD: 71-72).  MetLife's failure to provide a timely review and answer to the Plaintiff's appeal is an implicit denial of her appeal. See HCA Health Services of Georgia, 240 F.3d at 992

(finding the insurer issued an implicit denial of the plaintiff's appeal by not making a determination on the plaintiff's appeal within the allotted [45] day time frame).  Therefore, the Court will not recommend that the case be remanded to MetLife for a formal determination of the Plaintiff's administrative appeal but will instead proceed with examining the issues on summary judgment.

### (2) Whether the Plaintiff Complied with the Policy's Notice Requirement and Qualified for Benefits as a Class I Employee in May 2002

The Plaintiff argues that she was disabled in May of 2002 when she could no longer practice medicine and was reassigned as a bilingual health educator by the Family Health Centers.  The Defendant states the Plaintiff was disabled in April of 2003 when she could no longer work.  The Defendant argues that Family Health dropped its plan with the Defendant on March 31, 2003, when it ceased paying premiums.  Therefore, the Defendant argues the Plaintiff was not covered by the plan on her designated disability date.

The Defendant also argues  the Plaintiff's claim for disability based upon her classification as a Class I employee in May of 2002 is invalid because the claim would then violate the Policy's notice requirements.  Under the terms of the Policy, the Plaintiff had to notify the Defendant of her disability within thirty (30) days of the date of disability. (BMA: 19).  The Policy reads in pertinent part:

> [t]he Insured must send written notice of claim to BMA within 30 days of the date Disability starts.  If the Insured cannot send notice within this time, BMA must be notified as soon as it is reasonably possible to do so.
>
> BMA will send claim forms to the insured within 15 days after the notice of claim is received.  These forms must be completed and sent to BMA  If the insured does not receive the forms within 15 days after written notice of claim is sent, the Insured can send a written proof of claim to BMA.

> The time limit for a claim is no later than 90 days after the end of the Elimination Period.  If the proof of claim is not filed within this time limit, the claim may be denied.  If it was not reasonably possible to furnish this proof within the time limit, BMA will not reduce or deny the claim.  But, BMA shall have no liability when proof is furnished later than one year from the time proof is otherwise required, except in the absence of legal capacity of the claimant.

(BMA: 19).

In this instance, the Plaintiff states she became disabled in May of 2002, however, she did not notify the Defendant of her disability until March 15, 2004, which was almost two (2) years after she claimed the onset of her disability.  Under the terms of the Policy, the Plaintiff was required to provide notice to the Defendant "within 30 days of the date Disability starts" or by  June of 2002.  The Plaintiff actually claimed the onset of disability as May 16, 2002, therefore, her notice was due on June 15, 2002.  Thus, the proof of claim would be due by November 11, 2002.  The November 11, 2002, date is derived by adding the 90 day Elimination Period to the date of disability and then adding the 90 day deadline requiring that the proof of claim be submitted within 90 days of the end of the  elimination period.[3]   Finally, the Policy limitation on liability required the Plaintiff to file some claim by at least November 11, 2003.  The Plaintiff did not file for disability until March 15, 2004. (BMA: 19).  Thus, the Plaintiff's claim would be time barred because she failed to file her claim within the time restrictions included in the Policy. *See* Leit v. Revlon, 85 F. Supp. 2d 1293, 1297 (S.D. Fla. 1999) (holding "[p]articipant's claim for benefits under ERISA-covered long term disability plan was time-barred under plan, where participant failed to comply with plan's

---

[3] May 16, 2002 + 90 day Elimination Period + 90 day proof of claim deadline = November 11, 2002.

requirements that notice of claim be given within 30 days of date that disability starts and to provide

proof of claim within 270 days following discovery of disability.").

The Plaintiff asserts the notice clause may not be argued by the Defendant because the notice

exemption was not set forth in its denial letter and that the Defendant did not suffer any prejudice

from the late notification.  However, in a recent decision, the Eleventh Circuit held that it was not

error for the district court to specifically consider and examine post-hoc explanations provided by

the insurer in ERISA cases. Tippitt v. Reliance Standard Life Insurance, Co., 2008 WL 1875968 *

3 (11th Cir. April 29, 2008).

The Plaintiff also argues that the presumption of prejudice to the Defendant does not apply

to this action because there is no proof the Defendant was prejudiced by the late notice.  Florida law

provides that prejudice to the insurer is presumed "when a policy makes a compliance with a written

notice provision a condition precedent to the insurer's liability." Tiedtke v. Fidelity & Casualty Co.

of New York, 222 So. 2d 206, 208 (Fla. 1969).  While the Plaintiff argues  it believes the Defendant

would not have acted upon the application if it had been presented in a timely fashion, mere

conclusory speculations about how the Defendant would have acted are insufficient to overcome the

presumed prejudice under Florida law.

The Plaintiff further argues that written notification was not part of the Policy and therefore,

Tiedke, does not apply.  The Plaintiff's argument lacks merit.  As noted above, the Policy required

30 days written notice within the commencement date of claimed disability. (BMA: 19).  The Policy

further states that failure to provide some notice within a year of the onset of the disability would

relieve the Insurer of any liability under the Policy's terms.  Consequently, the decision from Tiedke

applies and therefore, the Court respectfully recommends the Plaintiff's claim should be denied.

*(3) Whether the Defendant is Prohibited from Raising a Preexisting Condition Defense*

The Plaintiff argues that MetLife is precluded from raising the preexistence clause as a defense to her claim because MetLife did not include the preexisting exclusion in its letter denying her benefits.  MetLife states the Plaintiff was not covered under the plan until February 1, 2002, therefore, she would not be covered for any long term consequences she suffered due to a grand mal brain seizure she had on December 2, 2001.

The Plaintiff's argument that only the information contained in the letter issued by MetLife denying her benefits lacks merit.  Courts have held that under *de novo* review the Plan Administrator may argue policy provisions that were not listed in the denial letter. Farley v. Benefit Trust Life Insurance, Co., 979 F. 2d 653, 660 (8th Cir. 1992). In this case, the Court should first review the Plan Administrator's decision *de novo* to make an initial determination if the Administrator was right or wrong. Williams, 373 F.3d at 1138; HCA Health Servs. of Georgia, 240 F.3d at 993.  Both Parties agree that a *de novo* review is appropriate in this instance.

Although the Plaintiff argues that ERISA claimants are entitled to timely and specific explanations of benefit denials, and may not be sandbagged by post-hoc justifications of plan decisions, it is not error for the district court to consider them. Tippitt, 2008 WL 1875968 at *3 (holding that it was not error for the district court to specifically consider and examine post hoc explanations).  In Farley, the Eighth Circuit held that to allow the insurer to only argue the information included in the letter of denial and not the terms and conditions of the policy as a whole would in effect permit the oral modification of the benefit plan covered under ERISA. 979 F. 2d at 660. Such an action would conflict with the intent of the statute and with the case law governing ERISA review. Id.  Furthermore, the Eleventh Circuit's recent ruling in Tippitt clearly established

-10-

that a district court can in fact consider an administrator's post-hoc explanations for denying coverage. 2008 WL 1875968 at * 3. The district court may choose not to accord self-severing post hoc explanations much weight, but it is not error for the district court to consider them. Id. If the Court were to review only the language of the denial letter and no other provisions of the Policy, the effect would be to create coverage where no coverage existed. See Doe v. Cigna Life Insurance Co. of New York, 304 F. Supp. 2d 477, 496-497 (W.D. N.Y. 2004) (holding the doctrine of waiver is inapplicable where the issue is the existence or nonexistence of coverage).

Therefore, the Court must consider whether or not the Defendant's preexisting condition argument is valid. However, before considering the preexisting condition clause, the Court must first determine if the Defendant used the proper date of hire in making its determination that the Plaintiff's condition was excluded under the preexisting condition clause.

### (4) Whether MetLife Erred in Determining the Plaintiff's Date of Hire

Under the terms of the LTD policy, the Plaintiff had to be actively at work for Family Health for at least thirty (30) hours per week and complete a sixty (60) day waiting period from the date of hire before she would be eligible for LTD coverage under the subject policy. (BMA: 32). The Plaintiff argues that her date of hire was September 25, 2001, because that was the date she signed the Professional Services Agreement (PSA) with Family Health Centers of Southwest Florida (Family Health) and that she was actively at work at least thirty (30) hours per week. The Defendant states the date of hire was November 5, 2001, the Plaintiff actually began working at Family Health on November 6, 2001 and she actually became eligible for coverage on February 4, 2002.

On September 23, 2001, Family Health sent the Plaintiff a letter that clearly stated the Plaintiff would be required to enter into a PSA prior to her employment. (STD: 11). The PSA clearly

stated that the time the agreement was to begin was November 5, 2001, and continue until November

4, 2003. (LTD: 23).   The Plaintiff signed the agreement and,  therefore,  acknowledged at that time

she would begin working for Family Health on November 5, 2001, and not September 25, 2001.  In

addition to the PSA, the Plaintiff also signed a letter of intent on September 23, 2001, which stated

"Dr. Calib will be employed to practice as a Family Practice Physician primarily at the Lehigh

Medical Clinic on behalf of Family Health Centers of Southwest Florida, Inc. beginning on or about

November 5, 2001. (STD: 11).  It is clear, the Plaintiff understood and agreed that she would begin

her employment with Family Health on or about November 5, 2001, when she signed the letter of

intent.  Therefore, it is recommended the date to be considered as the Plaintiff's date of hire should

be November 5, 2001.

   *(5)Whether the Plaintiff's Condition was Properly  Excluded Under the Preexisting Condition*
*Clause*

> The Policy's preexisting condition clause states:

>> [a] disability which begins during the first 12 months of coverage,
>> which is caused by, contributed to by, or results from a Preexisting
>> Condition will not be covered unless the insured has received no
>> Treatment for the condition for 6 consecutive months after the
>> insured's Effective Date.

>> Preexisting Conditions means a Sickness or Injury for which the
>> Insured received Treatment within 3 months prior to the Insured's
>> Effective Date.

(BMA: 19).

> The Plaintiff also argues that she met the terms of coverage under the Policy because she was

at work for at least thirty (30) hours per week from the time she signed the PSA in September.

However, the Plaintiff was employed with another company from September 25, 2001, until she

began working for the Defendants on November 5, 2001.  The Policy required the Plaintiff to be employed by Family Health and working at least thirty (30) hours a week for a period of sixty (60) days before LTD coverage would be effective. (BMA: 32).  The Policy language clearly states the "person must be Actively at Work at the Policyholder's place of business at least 30 hours each week." (BMA: 32).  This view is further supported by the employee handbook which states "**as a regular full time employee of Family Health Centers**, you may be eligible to participate in a number of employee benefit programs." (LTD: 56)(emphasis added).  Included in the benefits program discussed in the employee handbook are the LTD benefits at issue in this case. (LTD: 57).

Under the policy's terms and conditions, the coverage would then begin as follows:

> [t]he person's coverage or any change in benefits due to change in class begins the first date all requirements for coverage are met if that date is the first day of a Policy Month.  If all requirements are met after the first day of the Policy Month, the Effective Date will be the first day of the following Policy Month.
>
> Coverage may be delayed if the insured is not Actively at Work on the date coverage would otherwise have been effective.

(BMA: 11).  Therefore, had the Plaintiff been actively at work from November 5, 2001 through January 5, 2002, she would have been eligible for coverage on January 5, 2002.  However, because she did not return to work until February 4, 2002, her coverage was not effective until that date. The Plaintiff suffered a grand mal seizure on December 2, 2001, prior to her effective date.  Under the terms of the Policy, the Plaintiff was not eligible for coverage until she actually returned to work on February 3, 2002.  Therefore, it is respectfully recommended the Plan Administrator correctly determined the Plaintiff was not covered under the preexisting condition exclusion contained in the policy.

*Conclusion*

The Court respectfully recommends the Plaintiff is time barred from bringing her claim because she failed to comply with the Policy's notice requirements.  The Court further respectfully recommends that the Plaintiff was not eligible for LTD coverage until sixty (60) days from her hire date which began on November 5, 2001.  Thus, the period of eligibility would have begun on January 5, 2002, but due to her absence after she suffered a grand mal brain seizure, eligibility began on February 4, 2002.  As such, it is respectfully recommended that the Plaintiff was not covered under the preexisting condition clause contained in the policy.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

(1) The Defendants Business Men's Assurance Company of America, and Metropolitan Life Insurance Company's Motion for Summary Judgment (Doc. #29) should be **GRANTED**.

(2) The Plaintiff Beatriz Martinez-Claib, M.D.'s Motion for Summary Judgment (Doc. # 31) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ___9th___ day of September, 2008.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record

-14-